UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
CARL GOODWIN,                                          MEMORANDUM
                Plaintiff,                    AND ORDER
       - against -
MTA BUS COMPANY,                                       14-CV-4775 (RRM) (JO)
                Defendant.
----------------------------------------------------------------------X

James Orenstein, Magistrate Judge:

      Plaintiff Carl Goodwin ("Goodwin") has accused defendant MTA Bus Company (the "MTA") of unlawfully discriminating against him on the basis of his disability. *See* Docket Entry ("DE") 1 (Complaint). The MTA now asks the court to impose sanctions on Goodwin's former counsel, Frank & Associates, P.C. ("F&A"), for having filed a frivolous complaint, and to award it reasonable attorneys' fees for defending against Goodwin's claims. *See* DE 49; Fed. R. Civ. P. 11 ("Rule 11"); 28 U.S.C. § 1927 ("Section 1927"). Upon a referral from the Honorable Roslynn R. Mauskopf, United States District Judge, I now deny the defendant's motion.[1]

I.    Background

      Goodwin, then represented by F&A, filed his Complaint on August 12, 2014, accusing the MTA of failing to accommodate his disability and discriminating against him by maintaining an inflexible policy that did not provide for reasonable accommodation for probationary employees, and thereby violating his rights under federal, state, and municipal law. Complaint ¶ 1; *see* Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* (the "ADA"); New York State Human Rights Law, N.Y. Exec. Law §§ 296–97; New York City Human Rights Law, N.Y.C. Admin. Code § 8–107. Goodwin alleged that the MTA terminated his employment as a bus driver for being medically

---

[1] The case law of this circuit has not resolved whether a magistrate judge has statutory authority to impose sanctions under Rule 11. *See Kiobel v. Millson*, 592 F.3d 78 (2d Cir. 2010); 28 U.S.C. § 636. Because I determine that no sanctions should be imposed, and because that result is a non-dispositive resolution of a pre-trial matter, I conclude that I have the authority to issue this decision.

disqualified to operate a transit vehicle on the basis of taking anticoagulant medication for his deep vein thrombosis ("DVT") condition. Complaint ¶¶ 31-41. He further alleged that he had objected to his termination and requested reasonable accommodation for his disability – specifically a restricted, non-driving work assignment – but was told he was ineligible for such accommodation because he was not a full time employee. *Id.* ¶ 33.

Before filing suit, Goodwin filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"). *Id.* ¶ 5. On February 10, 2014, the EEOC determined that there was probable cause to believe that the MTA had discriminated against Goodwin because of his disability, that it had retaliated against him because of his participation in a legally protected activity, and that the challenged MTA policy was discriminatory. *See id.* ¶ 6; DE 64 (EEOC Final Determination dated Feb. 10, 2014; originally submitted at a conference on Apr. 7, 2016). The EEOC then issued a right-to-sue letter on July 1, 2014, *see* DE 1 at 12-13; and Goodwin then timely filed this action on August 12, 2014.

The parties exchanged discovery from January 6 through November 5, 2015. *See* DE 10 through DE 29. When, after several delays, discovery closed on the latter date, I afforded the MTA an opportunity to seek leave "promptly" to file a motion for summary judgment. DE 29. The MTA did so that same day, arguing that Goodwin was never able to establish a disability discrimination case under the ADA because he was neither disabled within the meaning of that law, nor was he "otherwise qualified" to perform the essential functions of his job as a bus operator because the state law forbids him from doing so. DE 30. The court held a pre-motion conference and set a briefing schedule for the motion on December 3, 2015. *See* DE 32.

Pursuant to the court's schedule, the MTA served its motion papers on January 28, 2016. Goodwin's response was due on March 24, 2016. The day before that deadline, on March 23, 2016, F&A moved to withdraw from representing Goodwin. DE 35. The firm explained that upon

2

receiving the MTA's motion, it "engaged in diligent research … and … concluded there [was] no valid defense to [it]." DE 35-1 ("Frank Decl.") ¶ 5. On that basis, F&A determined that filing a response to the summary judgment motion would violate Rule 11. *Id.*

The MTA immediately responded by requesting sanctions and noting that F&A had already violated Rule 11's mandate to "conduct a reasonable inquiry into the causes of action" and refrain from filing frivolous pleadings. DE 36. F&A opposed the request for sanctions, arguing that it filed the Complaint based upon the EEOC's findings that there was reasonable cause to believe that MTA had discriminated against Goodwin because of his disability. DE 39. I held a conference on the motion to withdraw on April 7, 2016. Goodwin appeared and consented to the withdrawal, but his counsel from F&A did not appear; I nevertheless granted the motion to withdraw. DE 41.

The MTA filed the instant fully briefed motion on June 13, 2016 *See* DE 49-1 (memorandum in support) ("Memo."); DE 50 (memorandum in opposition) ("Opp."); DE 51 (reply memorandum) ("Reply"). The court referred it to me by Order dated June 13, 2016.

II.  Discussion

    A.  Rule 11

By filing the Complaint, Goodwin's counsel necessarily made three certifications to the court to the best of his knowledge, information, and belief: that the pleading was "not being presented for any improper purpose[;]" that its claims were "warranted by existing law[;]" and that counsel had or expected he would likely secure evidentiary support for all of the Complaint's factual allegations. Fed. R. Civ. P. 11(b). Rule 11 places an "'affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed.'" *Gutierrez v. Fox*, 141 F.3d 425, 427 (2d Cir. 1998) (quoting *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 253 (2d Cir. 1985)). "'The standard for triggering the award of fees under Rule 11 is objective unreasonableness,' and is not based on subjective beliefs of the person making the statement." *Storey v. Cello Holdings, L.L.C.*, 347

3

F.3d 370, 387 (2d Cir. 2003) (quoting *Margo v. Weiss*, 213 F.3d 55, 65 (2d Cir. 2000)). Sanctions are appropriate where "it should have been patently obvious to any attorney who had familiarized himself with the law" that his action was frivolous. *Four Keys Leasing & Maint. Corp. v. Simithis*, 849 F.2d 770, 773 (2d Cir. 1988); *see also Pisciotta v. Dobrynina*, 2009 WL 1913393, at *2 (E.D.N.Y. July 2, 2009) ("'Rule 11 explicitly and unambiguously imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed.'" (quoting *Four Keys Leasing*, 849 F.2d at 774)).

"Although the imposition of sanctions is within the province of the district court, 'any such decision [should be] made with restraint and discretion.'" *Pannonia Farms, Inc. v. USA Cable*, 426 F.3d 650, 652 (2d Cir. 2005) (quoting *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 334 (2d Cir. 1999)). Even where a court has determined that Rule 11(b) has been violated, "the decision whether to impose sanctions is not mandatory, but rather is a matter for the court's discretion." *McLeod v. Verizon New York, Inc.*, 995 F. Supp. 2d 134, 145 (E.D.N.Y. 2014). "'[W]hen divining the point at which an argument turns from merely losing to losing *and* sanctionable, … courts [must] resolve all doubts in favor of the signer' of the pleading." *Dagostino v. Comput. Credit, Inc.*, 2017 WL 776086, at *10 (E.D.N.Y. Feb. 28, 2017) (quoting *Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993)); *see also MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc.*, 73 F.3d 1253, 1259 (2d Cir. 1996) (noting that "Rule 11 sanctions must be imposed with caution").

Further, under the "safe harbor" provision of Rule 11(c), a motion for sanctions must be served, but "must not be filed or be presented to the court if the challenged paper, claim, defense, contention or denial is withdrawn or appropriately corrected within 21 days of service or within another time the court sets." Fed. R. Civ. P. 11(c)(2). An informal warning in the form of a letter without service of a separate Rule 11 motion is not sufficient to trigger the start of the safe harbor period, but the advisory committee note to the rule explains that "[i]n most cases … counsel should

4

be expected to give informal notice to the other party … of a potential violation before proceeding to prepare and serve a Rule 11 motion." *Star Mark Mgmt., Inc. v Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 175 (2d Cir. 2012) (quoting Fed. R. Civ. P. 11(b)-(c) advisory committee's note to 1993 Amendments). Notably, the advisory committee note goes on to state that "the motion should be served promptly after the inappropriate paper is filed, and, if delayed too long, may be viewed as untimely." Fed. R. Civ. P. 11(b)-(c) advisory committee's note to 1993 Amendments; *see also In re Pennie & Edmonds LLP*, 323 F.3d 86, 89 (2d Cir. 2003) ("the 'safe harbor' provision functions as a practical time limit"); *Safe-Strap Co. v. Koala Corp.*, 270 F. Supp. 2d 407, 413 n.3 (S.D.N.Y. 2003) (collecting cases in which courts denied Rule 11 motions as untimely).

The MTA contends that the position statement it submitted to the EEOC on December 3, 2013, sufficed to put F&A on notice of the applicable law, and that counsel should therefore have known all along that the Complaint was frivolous. Memo. at 1-2. In particular, the MTA relies on case law supporting the conclusion that Goodwin is not disabled within the meaning of the ADA, and on New York regulations that require a bus driver to have "no current clinical diagnosis of … thrombosis, or any other cardiovascular disease of a variety known to be accompanied by syncope, dyspnea, collapse or congestive cardiac failure." *Id.* at 3-5 (quoting 15 N.Y. Comp. Code R. & Regs. § 6.10(b)); *see also* N.Y. Veh. & Traf. Law § 509-g(1); *Burton v. Metro. Transp. Auth.*, 244 F. Supp. 2d 252 (S.D.N.Y. 2003) (granting summary judgment against an ADA claim where a probationary bus operator was medically disqualified due to the use of anticoagulant medication, and finding that the plaintiff was not disabled within the meaning of the ADA).

F&A responds that sanctions are not warranted because the EEOC found the MTA's policy discriminatory, because it believed discovery would support an argument that Goodwin was entitled to a reasonable accommodation of a restrictive duty assignment, and because it avoided needlessly prolonging the action when it sought to withdraw rather than file an opposition to the summary

5

judgment motion. Opp. at 4-7. The firm notes that notwithstanding the issues regarding Goodwin's qualifications to work as a bus driver, it believed that "his disability should not have precluded him from being considered for other opportunities with the MTA as an accommodation[,]" and it "needed discovery to ascertain the affect that this MTA policy [making Goodwin ineligible for restricted duty assignment] had on Plaintiff and on disabled employees and whether it resulted in disparate impact[,]" as well as whether there were other available positions for which Goodwin was qualified at the time of his termination. *Id.* at 3. F&A further argues that the court should not sanction it because the MTA has not also asked for sanctions against Goodwin and his new counsel – who continue to litigate the same claim the MTA faults F&A for pursuing. *Id.* at 7.

In its reply, the MTA reiterates that Goodwin was never able to make out a *prima facie* case of discrimination under the ADA because he could never prove that he suffers from a cognizable disability within the meaning of that statute or that he was otherwise qualified to perform the essential functions of his job with or without reasonable accommodation. Reply at 2-5. Moreover, the MTA argues that even if F&A might not have known the case to be frivolous at the outset, it should have realized the lack of basis for the claim and withdrawn it upon the conclusion of the parties' depositions on October 21, 2015 (after which the parties exchanged no further discovery). *Id.* at 7.

It is true that F&A was on notice of pertinent precedent such as *Burton v. Metropolitan Transportation Authority*, as of December 2013, when the MTA submitted its position statement to the EEOC. But so too was the MTA – and yet it did not invoke Rule 11 as a basis for withdrawing the Complaint at the outset, nor did it even move to dismiss the case. Instead, the MTA exchanged discovery for over a year and then asked the court to dismiss Goodwin's claims on summary judgment. Indeed, the MTA did not propose Rule 11 sanctions for the filing of the Complaint, even informally, until March 23, 2016 – long after the close of discovery and after it had briefed the

6

summary judgment motion. *See* DE 36. It did not formally trigger the 21-day safe harbor period until later still, when it served its draft motion April 29, 2016. *See* DE 45; DE 49. At that point, F&A had already withdrawn from the case and was no longer in a position to withdraw or correct the Complaint. *See In re Pennie & Edmonds LLP*, 323 F.3d at 89 ("[M]otions have been disallowed as untimely when filed after a point in the litigation when the lawyer sought to be sanctioned lacked an opportunity to correct or withdraw the challenged submission."). In such circumstances, awarding sanctions would "defeat the goal, apparent from the text of Rule 11(c)(2), of streamlining litigation by allowing the party in the wrong the first opportunity to withdraw an offending paper." *Diamonds.net LLC v. Idex Online, Ltd.*, 254 F.R.D. 475, 477 (S.D.N.Y. 2008).

The MTA's delay in seeking relief under Rule 11 not only made it impracticable for F&A to respond by withdrawing the Complaint, it also caused the MTA itself to incur burdens it could have avoided by acting sooner, such as the expenses related to briefing its summary judgment motion. *See Team Obsolete Ltd. v. A.H.R.MA. Ltd.*, 216 F.R.D. 29, 44 (E.D.N.Y. 2003) (denying Rule 11 motion where the defendant waited over a year to object to the filing of the complaint, and stating that "[i]f the claims on their face were patently frivolous or without any basis in existing law (as opposed to containing factual allegations that only subsequent discovery would reveal lacks support), [the defendant] could have moved far sooner"). Accordingly, even assuming for purposes of analysis that F&A's filing of the Complaint on Goodwin's behalf was inconsistent with its duty under Rule 11, I conclude that no monetary sanction is warranted.[2]

---

[2] I also reject the MTA's assertion that F&A should be sanctioned under Rule 11 for failing to withdraw the Complaint after the close of party depositions on October 21, 2015. As this court has held, Rule 11 places an "affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed." *Pisciotta*, 2009 WL 1913393, at *2. The sanctionable conduct, if any, occurred when F&A filed the Complaint, not later.

7

B. Section 1927

The MTA contends that, because F&A "filed a legally baseless lawsuit, and forced the [MTA] to defend the suit for nearly two years," monetary reimbursement of the MTA's time and expenses is appropriate under 28 U.S.C. § 1927. Memo. at 9. F&A argues that Section 1927 sanctions are not appropriate because F&A did not act in bad faith. Opp. at 8-9.

The court may sanction an attorney who "multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. The court must analyze a request under this statute separately from a request under Rule 11, as the two provisions implicate different standards:

> Rule 11 requires only a showing of objective unreasonableness on the part of the attorney or client signing the papers, but § 1927 requires more: subjective bad faith by counsel. Finally, misconduct under Rule 11 must be judged as of the time the paper was signed, whereas § 1927 invites attention to a course of conduct, and imposes a continuing obligation on attorneys to avoid dilatory tactics.

*United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of Am.*, 948 F.2d 1338, 1346 (2d Cir. 1991).

In addition to the power conferred by Section 1927, the court also has the "'inherent power' to impose sanctions against parties or their counsel who have litigated in bad faith or who have willfully abused the litigation process." *Jones v. Hirschfeld*, 348 F. Supp. 2d 50, 62 (S.D.N.Y. 2004) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-46 (1991); *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 78 (2d Cir. 2000)). However, such authority should be exercised with restraint and discretion. *Chambers*, 501 U.S. at 44. To impose sanctions, "the trial court must find clear evidence that (1) the offending party's claims were entirely meritless and (2) the party acted for improper purposes." *Revson*, 221 F.3d at 79 (quoting *Agee v. Paramount Commc'ns Inc.*, 114 F.3d 395, 398 (2d Cir. 1997)); *see also In re Best Payphones, Inc.*, 450 F. App'x 8, 14 (2d Cir. 2011) (requiring a "clear showing of bad faith" (quoting *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986))).

8

To find that a party acts in bad faith, the court must conclude that the action is "entirely without color and has been asserted wantonly, for purposes of harassment or delay, or for other improper reasons.'" *Howard v. Klynveld Peat Marwick Goerdeler*, 977 F. Supp. 654, 667 (S.D.N.Y. 1997), (quoting *Browning Debenture Holders' Comm. v. DASA Corp.*, 560 F.2d 1078, 1088 (2d Cir. 1977)), *aff'd*, 173 F.3d 844 (2d Cir. 1999). The MTA has made no such showing about F&A. The record provides no basis for concluding that F&A acted in bad faith or for any improper purpose during the course of the litigation. I therefore deny the request for sanctions under Section 1927.

III. Conclusion

The record makes clear that the parties and counsel on both sides had more than enough information at their disposal to realize that the case could be resolved in ways far more efficient than going through discovery and motion practice – but that for reasons sufficient to themselves, they all chose a more laborious and expensive path. Under such circumstances, neither side can fairly place exclusive blame on the other for the burdens incurred to this point. For the reasons set forth above, I deny the defendant's motion for sanctions and for the reimbursement of its attorneys' fees.

SO ORDERED.

Dated: Brooklyn, New York
March 22, 2017

　　　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　JAMES ORENSTEIN
　　　　　　　　　　　　　　　　U.S. Magistrate Judge